UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
MAY 25 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

GEORGE A.,                                          20-CV-00691-MJR

                Plaintiff,                    DECISION AND ORDER

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 14)

        Plaintiff George A.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 13) is denied, defendant's motion (Dkt. No. 15) is granted, and the case is dismissed.

_____
[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB and SSI on January 22, 2017, alleging a disability onset date of November 19, 2016.  (Administrative Transcript ["Tr."] 169-182, 220).  The application was initially denied on April 14, 2017.  (Tr. 103-110).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 111-112).  A video hearing was held before Administrative Law Judge ("ALJ") Ellen Parker Bush, on February 15, 2019.  (Tr. 29-74).  The ALJ presided from Lawrence, Massachusetts, while Plaintiff and his counsel appeared in Jamestown, New York.  A vocational expert also appeared by telephone.  On May 1, 2019, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision.  (Tr. 7-23).  On April 10, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.    <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 19, 2016, the alleged onset date.  (Tr. 12).  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the lumbar and cervical spine, and COPD.  (Tr. 12-15).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15).  Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, except he can frequently stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to temperature extremes and respiratory irritants.  (Tr. 15-17).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a security guard.  (Tr. 17).  Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 19, 2016, through the date of the decision.  (Tr. 18).

IV.   *Plaintiff's Challenge*

At step two of the sequential evaluation, the ALJ determined that Plaintiff's bilateral hand neuropathy and mental impairments were non-severe impairments because they did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities. (Tr. 12-13).  Plaintiff disagrees with the ALJ's determination, contending that his mental impairments and bilateral hand neuropathy were severe impairments.  The Court finds Plaintiff's argument without merit.

The regulations explain that an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activity."  20 C.F.R. §§ 404.1522, 416.922; *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  If a claimant is found to have a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas: 1) understanding, remembering, and applying information, 2) interacting with others, 3) concentrating, persisting, and maintaining pace, and 4) adapting and managing oneself.  20 C.F.R. §§ 404.1520a(a), (c)(2)-(3), 416.920a(a), (c)(2)-(3).  If a claimant has no more than mild limitations in the four broad functional areas, then the ALJ will generally conclude that the mental impairment, or combination of impairments, is non-severe.  *Id.* at §§ 404.1520a(d)(1), 416.920a(d)(1); s*ee also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (summarizing and applying the special technique for evaluating mental impairments).

Here, the ALJ assessed Plaintiff's medically determinable impairments of history of opioid dependence, history of Attention Deficit Hyperactivity Disorder (ADHD), anxiety,

and depression, and concluded that they were non-severe because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 13). In so finding, the ALJ concluded that the record showed no limitation in Plaintiff's abilities to understand, remember, and or apply information; mild limitation in Plaintiff's ability to interact with others; mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace; and no limitation in his ability to manage himself. (Tr. 14). The ALJ's findings are supported by substantial evidence in the record.

First, in finding that Plaintiff demonstrated no limitation understanding, remembering, or applying information, the ALJ relied on consultative examiner Dr. Susan Santarpia's findings of intact memory, average cognitive functioning, and appropriate fund of information. (Tr. 14, 542). The ALJ further noted that Plaintiff was a reliable historian at his own medical appointments, demonstrating no limitation in understanding, remembering, and applying information. (Tr. 14, 341 (noting that Plaintiff's recall of recent clinic visits was consistent with medical records)). Moreover, psychiatric treatment notes from Dent Neurologic showed linear and goal-directed thought processes, intact memory, and appropriate fund of knowledge. (Tr. 341, 343, 346, 349, 355, 357). Thus, there is substantial evidence to support the ALJ's finding that Plaintiff demonstrated no limitation in understanding, remembering, or applying information. (Tr. 14).

In finding that Plaintiff demonstrated only a mild limitation in interacting with others, the ALJ noted that Plaintiff reported some social anxiety after he stopped abusing opioids, but also admitted to socializing with friends and family. (Tr. 14, 542, 818). The ALJ further noted that Dr. Santarpia found Plaintiff to be cooperative and to demonstrate appropriate eye contact. (Tr. 14, 542). The ALJ further noted that Plaintiff reported

managing his feelings of social anxiety by using coping techniques such as walking away from stressful situations until he relaxed.  (Tr. 14, 818).  Thus, again, there was substantial evidence to support the ALJ's finding.  (Tr. 14).

In concluding that Plaintiff demonstrated a mild limitation in concentrating, persisting, and maintaining pace, the ALJ acknowledged that Plaintiff was mildly inattentive at times.  (Tr. 14, 341, 343, 349 ("mild inattention at times")), *but see* (Tr. 346, 351, 357 ("stable attention and concentration")).  The ALJ nevertheless noted that Plaintiff demonstrated the ability to perform simple mathematical calculations at his consultative examination, and that Dr. Santarpia found intact attention and concentration.  (Tr. 14, 542).  Additionally, Plaintiff reported driving during the relevant period, which also presumably required the ability to maintain focus and concentrate.  (Tr. 540).  As such, there is substantial evidence to support the ALJ's finding that Plaintiff demonstrated only mild limitation in his ability to concentrate, persist, and maintain pace.  (Tr. 14).

Finally, the ALJ found that Plaintiff had no limitation adapting or managing himself.  (Tr. 14).  In so finding, the ALJ noted that Plaintiff reported dressing, bathing, and grooming himself.  (Tr. 14, 542).  She further noted that Plaintiff was able to cook, shop, and manage money.  (Tr. 14, 542).  Thus, there is substantial evidence to support the ALJ's finding that Plaintiff demonstrated no limitation in this domain.  (Tr. 14).

The ALJ also relied on medical opinions from consultative examiner Susan Santarpia, Ph.D., and State agency psychological consultant A. Dipeolu, Ph.D. in assessing the severity of Plaintiff's mental impairments.  (Tr. 15, 95, 542).  The ALJ assigned great weight to Dr. Santarpia's opinion that Plaintiff was able to understanding, remember, and apply simple and complex directions and instructions, use reason and

judgment to make work-related decisions, interact adequately with others, sustain concentration and pace, sustain an ordinary routine, maintain personal hygiene, and be aware of normal hazards, and had only mild limitations regulating emotion, controlling behavior, and maintaining well-being.  (Tr. 15, 543).   The ALJ explained that Dr. Santarpia's opinion was consistent with her examination findings, which included appropriate eye contact, normal speech, adequate expressive and receptive language, coherent and goal-directed thoughts, appropriate affect, euthymic mood, intact memory, intact concentration, and fair insight and judgment.  (Tr. 15, 542); see 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give to that medical opinion."). The ALJ further noted that Dr. Santarpia's opinion was consistent with treatment notes showing some mental health treatment, but little evidence of significant symptoms or limitations.  (Tr. 15).  The mental health treatment notes from Dent Neurologic from 2016 and 2017, show some findings of depressed and anxious mood and mild inattention, but normal speech, linear and goal-directed thought processes, normal thought content and intact memory.  (Tr. 341, 343, 346, 349, 351).  Additionally, treatment notes from Catholic Health from 2018 show that Plaintiff was using coping strategies for dealing with his anxiety, and performing activities such babysitting his granddaughter, helping his wife clean out his mother in law's house, and giving rides to his neighbor's son.  (Tr. 818, 821). As such, the ALJ assigned great weight to Dr. Santarpia's opinion of no more than mild limitations in mental functioning.  (Tr. 15); see 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ also assigned great weight to Dr. Dipeolu's opinion. (Tr. 15, 95). Dr. Dipeolu reviewed the evidence of record on April 12, 2017 and opined that the totality of the medical evidence of record showed that Plaintiff's psychiatric impairments were non-severe. (Tr. 95). The ALJ noted that Dr. Dipeolu's opinion was consistent with the treatment notes and Dr. Santarpia's report, which showed largely normal clinical findings. (Tr. 15, 341, 343, 346, 349, 351, 542, 818, 821); *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also, Micheli v. Astrue*, 501 F. App'x 26, 29 (2d. Cir. 2012) (the opinion of a State agency physician can constitute substantial evidence in support of an ALJ's RFC finding, provided that the opinion is supported by evidence in the record). As such, there is substantial evidence in the record supporting the ALJ's determination, including mostly normal clinical findings, a medical opinion of no more than mild limitations in the area of mental functioning, a second medical opinion that Plaintiff's mental impairments were non-severe, and Plaintiff's reported activities to conclude that Plaintiff's mental impairments did not significantly limit his mental ability to do basic work activity. 20 C.F.R. §§ 404.1522, 416.922; *Bowen*, 482 U.S. at 153; *Dixon*, 54 F.3d at 1030.

Plaintiff disagrees with the ALJ's findings and argues that treatment notes from his psychiatric treatment providers at Dent Neurologic Institute and his primary care providers at Lakeshore Family Medicine Associates support a finding that Plaintiff's mental impairments met the de minimis standard of severity. However, while Plaintiff may disagree with the ALJ's findings, he has not met his burden of proving that no reasonable factfinder could have found that Plaintiff's mental impairments were non-severe. *See Poupore*, 566 F.3d 303, 306 (2d Cir. 2009) (Plaintiff bears the burden of proof at steps one through four of the sequential analysis).

Plaintiff next argues that the ALJ erred in concluding that his bilateral hand/wrist neuropathy was a non-severe impairment. As discussed above, the regulations explain that an impairment "is not severe if it does not significantly limit [the claimant's] physical . . . ability to do basic work activity." 20 C.F.R. §§ 404.1522, 416.922. Basic work activities relate to the ability and aptitude to perform most jobs and the physical functions that jobs require such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying and handling. Id. at §§ 404.1522(b)(1), 416.922(b)(1).

Here, the ALJ acknowledged that the record showed moderate median neuropathy at the right wrist and mild median neuropathy at the left wrist. (Tr. 13, 579). The ALJ noted, however, that Plaintiff reported improvement with wrist splints, and that there was no indication in the record that his bilateral neuropathy limited his ability to perform basic work activity. (Tr. 13). The ALJ therefore found that Plaintiff's bilateral hand/wrist neuropathy was non-severe. (Tr. 13).

The ALJ's findings regarding Plaintiff's bilateral hand neuropathy are supported by substantial evidence in the record. Plaintiff complained of intermittent numbness and tingling in his hands at a consultative examination with Dr. Nikita Dave in March 2017. (Tr. 547). However, despite Plaintiff's complaints, Dr. Dave found a full range of motion of the bilateral wrists, intact hand and finger dexterity, and full (5/5) grip strength bilaterally. (Tr. 550). Plaintiff did not complain to his primary care providers of hand pain or dysfunction until May 30, 2017, when he reported bilateral wrist pain and numbness. (Tr. 696); see (Tr. 472-81, 496-98, 503-09, 668-95 (records from September 2016 through May 2017, containing no mention of wrist or hand symptoms)). Upon examination on May 30, 2017, Plaintiff's primary care provider found full wrist range of motion, full (5/5)

upper extremity strength, normal muscle tone of the wrist, negative Phalen's test, and negative Finkelstein's test bilaterally. (Tr. 697).  The physician, however, noted positive Tinel's sign at the carpal tunnel bilaterally, and referred Plaintiff for an electromyogram (EMG) and recommended bilateral wrist splints.  (Tr. 699).  Plaintiff presented for an EMG and nerve conduction studies on June 23, 2017, and complained of gradually worsening pain and numbness in his hands for several years.  (Tr. 578).  The EMG and nerve conduction studies revealed moderate right median neuropathy at the wrist and mild left medial neuropathy at the wrist.  (Tr. 579).  Nevertheless, when Plaintiff returned to his primary care provider on June 28, 2017, he reported that his wrist splints had "helped significantly."  (Tr. 706).  He declined a referral to an orthopedist, citing significant improvement in his wrist and hand symptoms.  (Tr. 707).  Plaintiff continued to see his primary care providers on a regular basis throughout the remainder of the relevant period, but did not mention any wrist or hand symptoms.  *See, e.g.,* (Tr. 709, 712, 713 717, 721, 725, 733, 737); *See Reynolds v. Colvin*, 570 Fed. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Dumas*, 712 F.2d at 1553 ("[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.").  Thus, substantial evidence in the record supports the ALJ's finding that Plaintiff's bilateral neuropathy was a non-severe impairment.  *See* 20 C.F.R. §§ 404.1522, 416.922; *Bowen*, 482 U.S. at 153; *Dixon*, 54 F.3d at 1030.

Plaintiff disagrees with the ALJ's findings, and cites to the EMG and nerve conduction studies as evidence that his bilateral neuropathy was severe.  However, the

ALJ acknowledged the findings of moderate right median neuropathy and mild left median neuropathy, and found that Plaintiff's bilateral neuropathy was a medically determinable impairment.   (Tr. 13, 578).   The ALJ then properly considered the severity of the impairment in accordance with the regulations, and reasonably concluded that the record as a whole did not indicate that Plaintiff's bilateral neuropathy limited his ability to perform basic work activities, such as reaching, handling, lifting, carrying, pushing, and pulling. (Tr. 13); *see* 20 C.F.R. §§ 404.1522(b)(1), 416.922(b)(1); *see also Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (The "mere diagnosis" of a condition, "without a finding as to the severity of symptoms and limitations, did "not mandate a finding of disability."). As such, the ALJ's findings were reasonable, and Plaintiff has not shown that the ALJ erred in considering his bilateral neuropathy.

Plaintiff further argues that the ALJ overlooked his testimony that he could not lift or carry heavy items, that he often dropped items, and that his hands went numb.  He claims that this testimony establishes that his bilateral neuropathy limited his ability to perform basic activities.  However, the ALJ cited Plaintiff's testimony that he could only lift up to ten pounds, had difficulty carrying groceries, and had trouble with zippers, but ultimately found that Plaintiff's statements were not fully supported by the medical record. (Tr. 16-17).  Indeed, the record showed mostly normal clinical findings, including full wrist range of motion and grip strength.  (Tr. 550, 697).  Moreover, the record showed minimal treatment for wrist pain, reported improvement with splints, and a wide range of daily activities that required the use of Plaintiff's hands.  (Tr. 540, 542, 706, 818, 821).  Thus, it was reasonable for the ALJ to conclude on the basis of the evidence in the record that

Plaintiff's claims were not fully supported, and that his bilateral neuropathy did not limit his ability to perform basic work activities.

Plaintiff next argues that the ALJ's assessment of his bilateral neuropathy was not supported by substantial evidence in the record because it was not supported by a medical opinion. He specifically contends that the ALJ made the severity determination of Plaintiff's bilateral hand neuropathy based on her own lay interpretation of raw medical data as there was no opinion evidence which addressed Plaintiff's bilateral hand neuropathy. In support of his argument, Plaintiff notes that the record contains only two medical opinions regarding his physical functioning: the March 2017 opinion of consultative examiner Dr. Dave and the April 2017 opinion of State Agency Medical Consultant Dr. Feldman. (Tr. 95, 551). Plaintiff argues that Dr. Dave and Dr. Feldman provided their opinions before the June 2017 electrodiagnostic studies showed evidence of neuropathy and that their opinions are therefore "stale" with respect to Plaintiff's bilateral neuropathy.

The Court finds Plaintiff's argument without merit for several reasons. First, there is no requirement that the ALJ rely on medical opinion evidence in assessing the severity of an impairment. *See* 20 C.F.R. §§ 404.1522, 416.922. Second, contrary to Plaintiff's claims, the ALJ did not rely exclusively on "raw medical data," but rather relied on evidence of improvement with splinting, Plaintiff's reported activities, and the lack of evidence showing that Plaintiff's hand pain caused limitation, all of which constitute substantial evidence in support of the ALJ's findings. (Tr. 13). Third, the opinion evidence in the record was not "stale." Although Plaintiff was formally diagnosed with neuropathy in June 2017, he complained to Dr. Dave of intermittent numbness and tingling in his

hands in March 2017. (Tr. 547). Thus, Plaintiff experienced symptoms of neuropathy before the June 2017 electrodiagnostic studies, including at the time of his consultative examination with Dr. Dave in March 2017. (Tr. 547; 578 (reporting ongoing symptoms hand symptoms "for the past few years.")). Despite Plaintiff's complaints to Dr. Dave of intermittent hand symptoms, Dr. Dave found full range of motion of the bilateral wrists, intact finger and hand dexterity, and full (5/5) grip strength bilaterally. (Tr. 547-49). As such, Dr. Dave's report supports the ALJ's finding that Plaintiff's neuropathy and hand pain and numbness did not cause physical limitation.

Finally, there is little evidence of hand symptoms after Dr. Dave and Dr. Feldman provided their opinions. Indeed, while Plaintiff was diagnosed with bilateral neuropathy on June 23, 2017, he reported significant improvement with wrist splints on June 28, 2017, and declined a referral to an orthopedist. (Tr. 707). The subsequent treatment notes from Plaintiff's primary care provider do not detail any additional complaints of hand pain or treatment for hand pain. (Tr. 709, 712, 713 717, 721, 725, 733, 737). Thus, the subsequent evidence in the record does not render Dr. Dave's report or Dr. Feldman's opinion stale, but rather indicates that Plaintiff's symptoms improved as of June 2017; *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (Court rejected the argument that State agency physician's opinion was stale simply because he did not review subsequent treatment notes, finding that the evidence submitted later did not differ materially from the evidence reviewed by the State agency physician).

In sum, while Plaintiff may disagree with the ALJ's findings, he has not met his burden of showing that no reasonable factfinder could have found that Plaintiff's bilateral neuropathy was non-severe. *See Poupore*, 566 F.3d at 306.

Plaintiff next argues that the ALJ's RFC finding for light work with frequent stooping, kneeling, crouching, crawling, and no exposure to temperature extremes and respiratory irritants is not supported by substantial evidence, because the ALJ did not properly weigh the opinions provided by Dr. Dave and Dr. Feldman.  He further contends that the ALJ impermissibly substituted her own lay judgment for Dr. Dave's opinion in assessing Plaintiff's RFC.  However, the Court finds that the ALJ properly weighed the medical opinions in accordance with the regulations, and Plaintiff has not met his burden of showing that the ALJ's RFC finding is not supported by substantial evidence. Moreover, as shown below, the ALJ's RFC finding for light work with additional postural and environmental limitations is supported by both medical opinions and other substantial evidence in the record.

In considering the opinion evidence of record, the ALJ assigned great weight to the opinion of State agency medical consultant Dr. Feldman, who reviewed the evidence of record on April 13, 2017, and concluded that Plaintiff retained the ability to perform light work with frequent stooping, kneeling, crouching, and crawling, and no exposure to temperature extremes and respiratory irritants.  (Tr. 17, 98).  In finding that Dr. Feldman's opinion was entitled to great weight, the ALJ concluded that the opinion was consistent with the totality of the evidence in the record, including the lack of specialized orthopedic treatment for back and neck pain.    (Tr. 17); see 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  The ALJ further considered that as a State agency medical consultant, Dr. Feldman is an expert in the Social Security disability program.  (Tr. 17); see 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) ("When we

consider how much weight to give to a medical opinion, we will also consider any factors . . . which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has . . . [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion.").

The ALJ's findings are supported by substantial evidence in the record. Indeed, the record shows that Plaintiff treated with his primary care providers for neck and back pain, and did not receive any specialized orthopedic treatment during the relevant period. Instead, Plaintiff's primary care providers recommended gentle stretching exercises, massage therapy, warm compresses, and pain medication (Lortab) to manage Plaintiff's back and neck pain. (Tr. 472, 497, 503-04, 509, 715, 726, 732, 739). The ALJ reasonably concluded that Dr. Feldman's opinion was consistent with relatively conservative care and a lack of specialized orthopedic treatment for neck and back pain. (Tr. 17).

Moreover, Dr. Feldman's opinion was consistent with treatment notes from Plaintiff's primary care providers, which showed some tenderness, but also generally revealed normal functioning in the lower extremities and the ability to perform activities of daily living. (Tr. 472, 497, 503-04, 508). Indeed, at an annual examination in January 2017, Plaintiff rated his back and neck pain intensity level as a five out of ten (5/10), and stated that he had no trouble performing activities of daily living despite his back pain. (Tr. 506). The physical examination revealed limited range of motion of the lumbar spine, but a normal gait, negative straight leg raising test, normal muscle tone, full motor strength, and normal (2+) deep tendon reflexes. (Tr. 508). Plaintiff consistently demonstrated a normal gait and full motor strength at subsequent appointments

throughout 2017 and 2018.  (Tr. 689, 693, 705, 707, 715, 719, 726, 729, 732, 735).  At follow up examinations in December 2018, Plaintiff walked with an antalgic gait and had limited range of motion of the lumbar spine, but demonstrated normal heel-toe walking, normal muscle tone, full muscle strength, normal (2+) deep tendon reflexes, and negative straight leg raising test.  (Tr. 738-39, 743, 747).  As such, the treatment notes and clinical findings in the record are consistent with Dr. Feldman's opinion that Plaintiff retained the ability to perform light work with frequent stooping, kneeling, crouching, and crawling.  (Tr. 98).

The ALJ also considered Dr. Dave's opinion that Plaintiff had: (a) moderate-to-marked limitations for repetitive bending and twisting through the cervical spine; (b) moderate limitations for repetitive bending and twisting through the lumbar spine; and (c) moderate limitations for lifting, carrying, pushing, and pulling of heavy objects, prolonged sitting, prolonged standing, and walking, and concluded that the opinion was entitled to only some weight.  (Tr. 17, 551).  In so finding, the ALJ explained that Dr. Dave's opinion was only somewhat consistent with her clinical findings and Plaintiff's conservative course of treatment for neck and back pain.  (Tr. 17).  Indeed, as the ALJ noted, Dr. Dave observed that Plaintiff walked with a normal gait, walked on heels and toes without difficulty, needed no help changing for the exam or getting on and off the exam table, and rose from a chair without difficulty.  (Tr. 17, 549).  Additionally, while Dr. Dave found limited ranges of motion in the cervical and lumbar spine and diffuse tenderness, she also found intact sensation, full (5/5) muscle strength, normal pulses, and full ranges of motion in Plaintiff's extremities.  (Tr. 550).  As such, the ALJ concluded that Dr. Dave's opinion was somewhat supported by her mixed clinical findings.  *See* 20 C.F.R. §§

404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion.").

Moreover, as the ALJ noted, Dr. Dave's opinion was not fully consistent with the overall record, which showed some limited range of motion in Plaintiff's back, but conservative treatment for neck and back pain.  (Tr. 17, 472, 497, 503-04, 509, 715, 726, 732, 739); see 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  As such, the ALJ reasonably assigned some weight to Dr. Dave's opinion that Plaintiff had moderate limitations in prolonged sitting, prolonged standing, walking, and lifting, carrying, pushing, and pulling heavy objects.  (Tr. 17).  The ALJ concluded, however, that Dr. Dave's opinion of significant limitations performing repetitive bending and twisting were not supported.  (Tr. 17).

Plaintiff argues that Dr. Dave's opinion is inconsistent with the ALJ's finding that Plaintiff could perform light work, and that the ALJ at no point explained why she failed to reconcile the RFC with the moderate limitations for prolong sitting, prolonged standing, and walking.  However, Plaintiff has failed to establish that moderate limitations in prolonged sitting, prolonged standing, and walking preclude the performance of light work.  The Second Circuit and this court have found that such limitations are consistent with an RFC for light work. *See Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (consultative examiner's assessment of mild limitations for prolonged sitting, standing, and walking supported ALJ's RFC finding for light work); *Amons v. Astrue*, 617 F.Supp.2d 173, 176 (W.D.N.Y.2009) (examining physician's opinion that plaintiff had moderate limitations in walking, standing, squatting, climbing and reaching supported ALJ's determination that plaintiff could perform light work reaching and limitations); *Harrington*

*v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015*) (finding that moderate limitation in sitting, standing, and walking was not inconsistent with RFC that claimant could sit, stand, and walk for six hours a day respectively and supported a finding of light or medium work) (collecting cases).  As such, Plaintiff has not shown that the ALJ's RFC finding is inconsistent with Dr. Dave's opinion of moderate limitations for lifting, carrying, pushing, and pulling of heavy objects, prolonged sitting, prolonged standing, and walking.

Plaintiff also contends that the ALJ improperly rejected the more limiting aspects of Dr. Dave's opinion, namely her opinion of moderate to marked limitations performing repetitive bending and twisting the cervical spine and moderate limitations performing repetitive bending and twisting the lumbar spine.  However, the ALJ explained that Dr. Dave's opinion of significant limitations performing repetitive bending and twisting were not fully supported by the evidence.  (Tr. 17).  Indeed, as the ALJ explained, Plaintiff demonstrated the ability to change for the consultative examination and get on and off the examination table without assistance, demonstrating that Plaintiff did not have such significant limitations moving his neck and back.  (Tr. 17, 549).  Moreover, Dr. Dave's opinion of moderate to marked limitations for *repetitive* twisting and bending through the cervical spine is inconsistent with Plaintiff's reported ability to drive a car, as safe driving requires the ability to turn one's head.  (Tr. 230).  Finally, it is worth noting that while Dr. Dave assessed more severe limitations in bending and twisting the neck, treatment notes from Plaintiff's primary care providers from 2017 and 2018 focus more on back pain than neck pain, and do not report any significant range of motion deficits in the cervical spine.  (Tr. 689, 693, 705, 707, 715, 719, 726, 729, 732, 735, 738-739, 743).  Thus, substantial

evidence supports the ALJ's decision to assign less weight to Dr. Dave's opinions regarding bending and twisting. *See Veino* v. *Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) (an ALJ may reject portions of a medical opinion not supported by and even contrary to the objective evidence of record while accepting those portions that are supported by substantial evidence). In any event, the ALJ did account for limitation in *repetitive* bending by limiting Plaintiff to no more than frequent (up to two-thirds of the time) stooping and crouching. (Tr. 15); *see* SSR 83-10, 83-14 (noting that stooping and crouching are two types of bending).

Finally, Plaintiff argues that by partially relying on Dr. Dave's opinion, the ALJ substituted her own judgment for that of a competent medical opinion based on her own lay opinion.  However, as discussed above, the ALJ relied on substantial evidence in support of her finding that Plaintiff could perform light work, including clinical findings, daily activities, and a conservative course of treatment.  Moreover, contrary to Plaintiff's claims, the ALJ did rely on medical opinion evidence in assessing Plaintiff's RFC, namely Dr. Feldman's opinion that Plaintiff could perform light work.  (Tr. 17, 95).  Plaintiff argues that the ALJ was not permitted to rely on the opinion of a non-examining source, such as Dr. Feldman, over the opinion of an examining source, such as Dr. Dave.  However, the Second Circuit has held that an ALJ is permitted to choose between conflicting medical opinions, and can even assign more weight to the opinion of a non-examining source than to a treating source opinion.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.); *Diaz v. Shalala*, 59 F.3d at 313 n.5. (Medical opinions from non-examining sources can be given great weight when they are supported by medical evidence of

record.); *Camille v. Colvin*, 652 F. App'x 25,27-28 (2d. Cir. 2016) (ALJ properly credited a State agency consultant's opinion over the plaintiff's treating physician's opinion, because the former was more consistent with the record).

## CONCLUSION

. For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 15) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 24, 2021
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge